David P. Williams (Utah Bar No. 7346)
SNELL & WILMER
15 West South Temple #1200
Salt Lake City, UT 84101-1531
Telephone:  (801) 257-1914

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Polly Towill (Cal. Bar No. 120420) (*Pro hac vice* pending)
Heather L. Plocky (Cal. Bar No. 279022) (*Pro hac vice* pending)
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
Telephone:  (213) 620-1780

*Attorneys for Plaintiff BofI Federal Bank*

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BofI FEDERAL BANK,<br>a federal savings bank,<br><br>     Plaintiff,<br><br>v.<br><br>AMERICA'S CAPITAL FINANCE, LLC,<br>a Texas Limited Liability Company; and<br>DOES 1-10,<br><br>     Defendants | **COMPLAINT AND JURY DEMAND**<br><br>Case No. 2:17-cv-01180-BSJ<br><br>Judge Bruce S. Jenkins |

-1-

For a First Amended Complaint, Plaintiff BofI Federal Bank ("BofI") hereby complains against defendant Americas Capital Finance, LLC ("ACF") and alleges as follows:

## NATURE OF ACTION

1.      ACF has illegally enriched itself at BofI's expense by, among other things, its: (1) taking of, and using for its own benefit, BofI's trade secrets and confidential information, including but not limited to customer lists; (2) recruitment of BofI's employees; (3) solicitation of BofI's customers; and (4) unauthorized use of BofI's BOFI EQUIPMENT FINANCE registered trademark. All of the aforementioned acts were committed by ACF in a willful and malicious attempt to illegally compete with BofI.

2.      Accordingly, BofI seeks redress for ACF's (i) trademark infringement and unfair competition, in violation of the Lanham Act, 15 U.S.C. §§1051 et seq.; (ii) unfair competition and false designation of origin, 15 U.S.C. § 1125(a); (iii) violation of the Anti-Cybersquatting Consumer Protection Act 15 U.S.C. § 1125(d); (iv) trademark infringement under the Utah Trade Secrets Act; (v) trade secrets misappropriation under the Utah Trade Secrets Act; (vi) violation of the Utah Unfair Competition Act, U.C.A. § 13-5A-102; (vii) tortious interference with economic relations; (viii) tortious interference with contract; and (ix) unjust enrichment.

## PARTIES

3.      At all times mentioned herein, plaintiff BofI was, and is, a federal savings bank headquartered in San Diego, California and with an office in Salt Lake City, Utah.

4.      BofI is a diversified financial services company that provides innovative banking and lending products and services to personal and business banking customers throughout the United

States under its family of BofI-formative marks ("BOFI Marks"), including the registered trademark BOFI EQUIPMENT FINANCE ("BOFI EQUIPMENT FINANCE Mark").  Through its Equipment Finance Group, BofI provides financing solutions for the purchase of equipment using the equipment as collateral.

5.      Upon information and belief, defendant ACF is a limited liability company registered in the State of Texas with its primary place of business in Salt Lake City, Utah.

6.      Defendants sued herein as Does 1 through 10, inclusive, are sued in their fictitious names and capacities as their identities have not yet been determined.  BofI is informed and believes, and on that basis alleges, that each Defendant is responsible in some way for the acts alleged herein. BofI will seek leave to amend its Complaint to allege such Doe's true names and capacities when they have been ascertained.

7.      BofI is informed and believes, and on that basis alleges, that all Defendants, including the fictitious Doe defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners and/or joint ventures and employees of all other defendants, and all acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy and/or enterprise, and with the express and/or implied permission, knowledge, consent, authorization, and ratification of their co-defendants.

## JURISDICTION AND VENUE

8.      The First, Second, and Third Claims for Relief arise under the Lanham Act, 15 U.S.C. §§1051 *et seq*.  This Court has original subject matter jurisdiction over these claims pursuant to 28

-3-

U.S.C. Sections 1331 et seq and 1338, and 15 U.S.C. § 1121.

9.     This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because it involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     The Fourth through Ninth Claims for Relief arise under Utah statutory and common law.  This Court has concurrent subject matter jurisdiction over these Claims for Relief on the basis of supplemental jurisdiction under 28 U.S.C. § 1367(a), because: (1) the federal and state law claims asserted herein are based, in part, upon the same operative facts; (2) the Court's exercise of jurisdiction over the pendent state law claims will promote judicial economy, convenience, and fairness to the parties; and (3) such claims are so related to the First through Third Claims for Relief that they form part of the same case or controversy under Article III of the United States Constitution.

11.     The agreements, contracts, and acts which are the basis of this action occurred in Salt Lake City County, State of Utah.  Venue is therefore proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred or had effects in this District.

12.     This Court has personal jurisdiction over ACF.  Upon information and belief, ACF's primary place of business is in Salt Lake City County, Utah.

### FACTS COMMON TO ALL CLAIMS

#### BofI Acquires Pacific Western Equipment Finance

13.     On or about March 31, 2016, BofI closed on an asset purchase agreement under

which BofI acquired certain assets and assumed certain operations of Pacific Western Equipment Finance ("PacWest") from Pacific Western Bank (the "Acquisition").

14.     Through the Acquisition, BofI acquired approximately $140 million of equipment leases diversified across 36 states and Canada, and over 50 industries.

15.     On or about April 5, 2016, BofI rebranded PacWest under the BOFI EQUIPMENT FINANCE Mark, and contemporaneously filed U.S. Trademark Application No. 86965449 for the mark BOFI EQUIPMENT FINANCE, which matured into U.S. Trademark Reg. No. 5157808 on March 7, 2017.

### As Part of Its Acquisition of PacWest, BofI Hires Former PacWest Employees

16.     As part of the Acquisition, BofI retained approximately 25 existing employees, including PacWest's entire senior management team.

17.     Panuzio, a  former employee at PacWest, became an employee of BofI as a result of the Acquisition.  Panuzio commenced his employment at BofI as a Relationship Manager in BofI's Equipment Finance Group on April 1, 2016 in BofI's office in Salt Lake City, Utah.

18.     Klepper, a former employee at PacWest, became an employee of BofI as a result of the Acquisition.  Klepper commenced his employment at BofI as a Relationship Manager in BofI's Equipment Finance Group on April 1, 2016 in BofI's office in Salt Lake City, Utah.

19.     Bruschke, a former employee at PacWest, became an employee of BofI as a result of the Acquisition.  Bruschke commenced his employment at BofI as a Relationship Manager in BofI's Equipment Finance Group on April 1, 2016 in BofI's office in Salt Lake City, Utah.

4833-3658-4281

20.     Panuzio was an employee of BofI until July 15, 2016, when he left BofI to run ACF. ACF purports to provide services in the same line of business as the services offered by BofI.  Upon information and belief, Panuzio is currently the Managing Partner of ACF.

21.     While Klepper was a BofI employee, Panuzio solicited him to join him at ACF and resign from BofI.  Klepper's employment with BofI ended on September 7, 2016, when he left to join Panuzio at ACF.  Upon information and belief, Klepper is currently a partner and vice president at ACF.

22.     While Bruschke was a BofI employee, Panuzio solicited him to join him at ACF and resign from BofI.  Bruschke's employment with BofI ended on September 7, 2016, when he left to join Panuzio at ACF.  Upon information and belief, Bruschke is currently a partner and vice president at ACF.

23.     Through his employment with BofI, Panuzio had access to, and did access, BofI's trade secret and confidential information, including its strategic plans for developing and marketing BofI's products and services, compensation plans, customer lists, term sheets, customer investment information, and pricing arrangements (collectively, "Trade Secret and Confidential Information").

24.     Through his employment with BofI, Klepper had access to, and did access, BofI's Trade Secret and Confidential Information.

25.     Through his employment with BofI, Bruschke had access to, and did access, BofI's Trade Secret and Confidential Information.

26.     As a condition of employment with BofI, Panuzio was required to sign an Employee Confidentiality, Non-Disclosure, and Non-Recruiting Agreement (hereinafter referred to as the

"Non-Disclosure Agreement").   Panuzio executed the Non-Disclosure Agreement on or about April 6, 2016.

27.     As a condition of employment with BofI, Klepper was required to sign a Non-Disclosure Agreement.  Klepper executed the Non-Disclosure Agreement on or about April 6, 2016.

28.     As a condition of employment with BofI, Bruschke was required to sign a Non-Disclosure Agreement.  Bruschke executed the Non-Disclosure Agreement on or about April 5, 2016.

29.     The Non-Disclosure Agreement includes a provision setting forth the duty of loyalty, and specifically that employees are not to usurp, for personal gain, any opportunities in BofI's line of business.

30.     The Non-Disclosure Agreement prohibits the unauthorized disclosure and use of BofI's Trade Secret and Confidential Information.  The Non-Disclosure Agreement requires that BofI's employees not use, publish, or disclose any Trade Secret and Confidential Information during or after termination of their employment except as required in the conduct of BofI's business or as authorized in writing by BofI.  After termination of employment, the Non-Disclosure Agreement requires employees to inform BofI, and to deliver to BofI, all Trade Secret and Confidential Information which they prepared, used, or came in contact with while employed at BofI.

31.     Pursuant to Paragraph 2D of the Non-Disclosure Agreement, Panuzio, Bruschke and Klepper each acknowledged that Trade Secret and Confidential Information developed, created or maintained by him, alone or with others, while employed by BofI, shall remain at all times the sole

-7-

property of BofI.

32.     Pursuant to Paragraph 2F of the Non-Disclosure Agreement, Panuzio, Bruschke and Klepper each agreed that he would not, directly or indirectly, solicit or attempt to solicit any business from any of BofI's clients and/or customers for the purposes of providing products or services that are competitive with those provided by BofI for a period of two years following the termination of his employment from BofI.

33.     Pursuant to Paragraph 3 of the Non-Disclosure Agreement, Panuzio, Bruschke and Klepper each agreed that he would not directly or indirectly recruit, or attempt to recruit, any employee of BofI, or induce or attempt to induce any employee of BofI to terminate or cease employment with BofI for a period of two years following the termination of his employment from BofI.

34.     Pursuant to Paragraph 4 of the Non-Disclosure Agreement, Panuzio, Bruschke and Klepper each promised that, during his employment with BofI, he would not directly or indirectly engage or attempt to engage in any competitive activity relating to the subject matter of his employment with BofI or relating to BofI's line of business.

35.     Pursuant to Paragraph 8 of the Non-Disclosure Agreement, Panuzio, Bruschke and Klepper each acknowledged and agreed that if BofI's Trade Secret and Confidential Information was disclosed to a competing business or used in a manner not authorized in the Non-Disclosure Agreement, such unauthorized disclosure or use would cause immediate and irreparable harm to BofI, and would give the competing business an unfair business advantage against BofI for which BofI may not have an adequate remedy at law.  Accordingly, Panuzio, Bruschke and Klepper each

agreed that BofI would be entitled to any proper injunction to enforce certain provisions of the Non-Disclosure Agreement.

36.     As ACF knows or should know, BofI never relieved Panuzio, Bruschke or Klepper of any obligations set forth in the Non-Disclosure Agreement.

### Panuzio, Bruschke and Klepper, Spear-Headed by Panuzio, Form ACF to Directly Compete with BofI

37.     Despite their contractual obligations to BofI, including an obligation not to compete, Panuzio, Bruschke, and Klepper embarked upon a course of conduct to unfairly compete with BofI using any means necessary.

38.     Upon information and belief, Panuzio, with the help of Klepper and Bruschke, orchestrated and executed a scheme to operate a competing equipment finance company during their employment at BofI.   The plan was conceived and implemented months before any of them left BofI.  It culminated with the creation and operation of ACF.

39.     Panuzio filed the registration papers for ACF in Texas on June 20, 2016, while still employed by BofI.  Upon information and belief, Panuzio worked with Klepper and Bruschke to create and register ACF, a competing business that they jointly operate today, while all three were BofI employees.

40.     ACF was formed by Panuzio, Bruschke and Klepper to provide services that compete with BofI's services.  ACF was formed using proprietary information taken from BofI without authorization and in violation of the Non-Disclosure Agreement that Panuzio, Bruschke and Klepper each signed as a condition of his employment with BofI.

41.     Panuzio, Bruschke and Klepper pilfered Trade Secret and Confidential Information from BofI (including customer lists and marketing ideas) while they were BofI employees, and have utilized such information in furtherance of the interests of ACF.

42.     Upon information and belief, this was not the first time that Panuzio has been accused of stealing customer information; Panuzio was previously terminated from another Salt Lake leasing company for a similar theft.

43.     Having taken BofI's Trade Secret and Confidential Information and with ACF up and running, Panuzio, Bruschke and Klepper executed the next step in their plan: actively encouraging, inducing, and recruiting BofI employees to join them at ACF, resulting in immediate and continuing harm to BofI.

44.     Panuzio began officially working at ACF on July 16, 2016.  ACF solicited Klepper to resign from BofI and join ACF.  Klepper resigned from BofI on September 7, 2016.

45.     ACF solicited Bruschke to resign from BofI and join ACF.  Bruschke resigned from BofI on September 7, 2016.

46.     Panuzio, as an agent for ACF, worked behind the scenes to benefit ACF while he was still employed by BofI.

47.     Klepper, as an agent for ACF, worked behind the scenes to benefit ACF while he was still employed by BofI.

48.     Bruschke, as an agent for ACF, worked behind the scenes to benefit ACF while he was still employed by BofI.

49.     Upon information and belief, ACF knew the contractual obligations that Panuzio,

Klepper, and Bruschke owed to BofI at the time they began working for ACF.

50.     Upon information and belief, ACF used improper means, including but not limited to the use of deceit, misrepresentation, and the making of disparaging false assertions, to solicit other BofI employees to breach the covenants in the Non-Disclosure Agreement.

51.     Upon information and belief, ACF's actions were part of a pre-planned and coordinated effort orchestrated to harm BofI's business and bolster the competing enterprise.

### ACF Diverts Customers and Business from BofI

52.     ACF, through its agents Panuzio, Bruschke and Klepper, also attempted to induce BofI's customers to leave, causing BofI to lose business.

53.     Since leaving BofI, Panuzio, Bruschke and Klepper, acting on behalf of and for the benefit of ACF, have directly or indirectly solicited, diverted, enticed, or taken away one or more of BofI's customers or potential customers with whom they had contact, involvement, or responsibility during their employment with BofI through improper means.  ACF has induced BofI's customers to breach their contracts with BofI.  ACF is now providing the same products and services to BofI's former customers that BofI used to provide to them, by using any tactics necessary.

54.     ACF, through its agents Panuzio, Bruschke, and Klepper, have been disclosing and using BofI's Trade Secret and Confidential Information in an attempt to benefit ACF and usurp business from BofI.  Panuzio, Bruschke, and Klepper took BofI's customer names and contact information, and have attempted to use such information to solicit business from BofI's customers.

55.     To further market its business, ACF has barraged BofI customers with phone calls,

often portraying BofI in a negative light.  As an example, in or around September 26, 2017, Klepper called a BofI customer several times and made false assertions, including that (1) BofI's Equipment Finance Division was collapsing; and (2) BofI's Chief Financial Officer and Chief Credit Officer had both just quit.  Upon information and belief, ACF has made similar, and other, false assertions to BofI's current or potential clients in an attempt to improperly steal BofI's current customers and potential future customers.

56.     Given the nature of Panuzio's, Bruschke's and Klepper's employment at ACF, it is likely that ACF will continue to use and disclose BofI's Trade Secret and Confidential Information.

57.     ACF's wrongful conduct has caused and is continuing to cause substantial harm to BofI.

### BofI's Marks and Strong Market Presence

58.     The great market success of BofI's registered trademarks has made BofI one of the nation's leading banks.

59.     The strength of the BOFI Marks, including the BOFI EQUIPMENT FINANCE Mark and brand, and the quality of the associated services, are evidenced by the fact that BofI has won numerous awards and received repeated industry recognition.   As a result, the BOFI EQUIPMENT FINANCE Mark and the goodwill associated therewith are of inestimable value to Plaintiff.

60.     Because BofI intends to preserve and maintain its rights with respect to the BOFI Marks, including but not limited to the BOFI EQUIPMENT FINANCE Mark, BofI's trademark registrations are diligently maintained and are currently in full force and effect.

**Panuzio Registers a Domain Name That Infringes on BofI's Registered Trademark**

61.     Unbeknownst to BofI, and without BofI's authorization, Panuzio registered the domain name <bofiequipmentfinance.com> (the "Infringing Domain") on June 8, 2016 – while Panuzio, Klepper, and Bruschke were still BofI employees.  Upon information and belief, Panuzio registered the domain name with Klepper's and Bruschke's approval, and for the benefit of ACF. The Infringing Domain is identical to the BOFI EQUIPMENT FINANCE Mark, and wholly incorporates the BOFI EQUIPMENT FINANCE Mark.  As recently as September 25, 2017, ACF caused the Infringing Domain to redirect all traffic to ACF's website, located at the domain name <acfinance.com>.

62.     Upon information and belief, Panuzio registered the Infringing Domain with a clear and malicious intent to divert consumers seeking the website for goods and services provided by BofI to ACF's competing website and business.

63.     The Infringing Domain was registered for ACF's benefit by Panuzio with full knowledge of BofI's rights in the BOFI EQUIPMENT FINANCE Mark, and specifically because it is identical to the BOFI EQUIPMENT FINANCE Mark.

64.     At no time did BofI license, authorize, or otherwise permit ACF to apply for any domain name incorporating the BOFI EQUIPMENT FINANCE Mark, and certainly not for ACF's benefit.

65.     BofI owns exclusive rights in the BOFI EQUIPMENT FINANCE Mark, and owns a United States federal trademark registration therefor.

66.     ACF does not have any trademark rights in the BOFI EQUIPMENT FINANCE

Mark, nor was it authorized by BofI to use the BOFI EQUIPMENT FINANCE Mark.

67.     ACF has used the Infringing Domain for the illegitimate purpose of misdirecting

consumers to its website offering services competitive with BofI's services.

68.     Upon learning about ACF's improper use of the Infringing Domain, BofI sent a

demand letter to Panuzio, with a copy to info@acfinance.net, on September 22, 2017, demanding

that ACF immediately (1) take any and all action required to cease re-directing traffic from the

Infringing Domain to the ACF website; and (2) transfer the registration of

<bofiequipmentfinance.com>, as well as any and all other domain names comprised of BofI's names

or marks or variations therefor that ACF had registered, to BofI.

69.     Thereafter, ACF ceased re-directing traffic from the Infringing Domain to the ACF

website.  ACF did not transfer to BofI the registration of <bofiequipmentfinance.com> or any other

domain names containing BofI's names or marks or variations therefor, that ACF had registered.

### FIRST CLAIM FOR RELIEF
(Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114(1))

70.     BofI incorporates the allegations of paragraphs 1 through 69 as if fully set forth

herein.

71.     BofI owns the federally registered BOFI EQUIPMENT FINANCE Mark.  The BOFI

EQUIPMENT FINANCE Mark is strong and distinctive and designates BofI as the source of all

products and services advertised, marketed, sold or used in connection with the Mark.

72.     BofI has never licensed or otherwise authorized ACF to use, or permit its agents to

use, the BOFI EQUIPMENT FINANCE Mark, or any variation thereof.  BofI has never licensed or otherwise authorized ACF to assert or imply any endorsement by or affiliation with BofI.

73.     Panuzio, Klepper, and Bruschke were BofI employees at the time the domain name was registered, and therefore they knew the BOFI EQUIPMENT FINANCE brand had launched at BofI.  Upon information and belief, based on the facts set forth above, including the similarity of the content and appearance of the Infringing Domain, the overlap of ACF's products and services with those of BofI, and the results of searches using popular search engines, ACF was aware of the BOFI EQUIPMENT FINANCE Mark prior to adopting and/or using the Infringing Domain for its competing products and services.

74.     ACF has used the BOFI EQUIPMENT FINANCE Mark in commerce without BofI's consent.

75.     ACF's use is likely to cause confusion, to cause mistake, or to deceive.  Upon information and belief, ACF has knowingly and intentionally used the Infringing Domain, with the intent of causing confusion and mistake, and misleading and deceiving the public generally, and BofI's customers in particular, into believing that ACF's products and services are associated with or endorsed by BofI, and that BofI somehow authorized, sponsored, approved, licensed or participated in ACF's use of the Infringing Domain.

76.     As a direct and proximate result of ACF's wrongful conduct, BofI has been, and will continue to be, damaged.

77.     ACF's actions thus constitute trademark infringement in violation of the Lanham Act,

15 U.S.C. § 1114(1).

78.     Unless ACF is preliminary and permanently enjoined from committing the unlawful acts alleged herein, including the unauthorized use in commerce of the Infringing Domain, BofI will continue to suffer irreparable harm.  Accordingly, BofI is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 restraining ACF, its officers, agents and employees, and all persons acting in concert with it, from engaging in any further such acts of trademark infringement in violation of the Lanham Act.

79.     Pursuant to 15 U.S.C. § 1117(a), BofI is also entitled to recover damages it has sustained and will sustain as a result of ACF's wrongful conduct, and the gains, profits and advantages that ACF has obtained as a result of its wrongful conduct.  At present, BofI is unable to ascertain the full extent of its damages, or the gains, profits and advantages that ACF has obtained by reason of its wrongful conduct described herein.

80.     ACF's conduct was, and continues to be, intentional and BofI is therefore entitled to an award of treble damages against ACF pursuant to 15 U.S.C. § 1117(a).

81.     ACF's willful acts make this an exceptional case under 15 U.S.C. § 1117(a), and therefore BofI is entitled to an award of attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
(Unfair Competition & False Designation of Origin, 15 U.S.C. § 1125(a))

82.     BofI incorporates the allegations of paragraphs 1 through 81 as if fully set forth herein.

83.     BofI owns the BOFI EQUIPMENT FINANCE Mark, which is federally registered.

The BOFI EQUIPMENT FINANCE Mark is strong and distinctive, and designates BofI as the source of all products and services advertised, marketed, sold or used in connection with the Mark.

84.     BofI is the senior user of the BOFI EQUIPMENT FINANCE Mark.  It began using the Mark in interstate commerce prior to ACF's first use of its confusingly similar Infringing Domain.  In particular, BofI has been using the BOFI EQUIPMENT FINANCE Mark in commerce continuously since April 5, 2016.

85.     BofI has never licensed or otherwise authorized ACF or ACF's agents to use the Infringing Domain.  BofI has never licensed or otherwise authorized ACF to use the BOFI EQUIPMENT FINANCE Mark or any variation thereof.  BofI has never licensed or otherwise authorized ACF to assert or imply any endorsement by or affiliation with BofI.

86.     Upon information and belief, for the reasons set forth above, ACF was aware of the BOFI EQUIPMENT FINANCE Mark prior to adopting and/or using the Infringing Domain for its competing products and services.  Furthermore, ACF was expressly advised of BofI's trademark use and rights and of the infringing nature of the Infringing Domain and ACF's use thereof.  Thus, ACF's unauthorized use of the Infringing Domain was, and is, knowing, intentional, and willful.

87.     The Infringing Domain is a close imitation of the BOFI EQUIPMENT FINANCE Mark, and is used in connection with products that are related to those offered by BofI and in markets that are the same as markets served by BofI.

88.     This use is likely to cause confusion with respect to the source and origin of ACF's products, and is likely to cause confusion or mistake, and to deceive purchasers as to the affiliation,

connection, or association of BofI with ACF and/or ACF's products.  In particular, ACF's use of the Infringing Domain will likely cause confusion as to the origin and authenticity of ACF's products and services, will likely cause others to believe that there is a relationship between BofI and ACF, will mislead consumers into believing that ACF's products and services are associated with or endorsed by BofI, and will create the false impression that BofI has somehow authorized, sponsored, approved, licensed or participated in ACF's use of the confusingly similar Infringing Domain.

89.     As a direct and proximate result of ACF's wrongful conduct, BofI has been, and will continue to be, damaged.

90.     ACF's acts constitute unfair competition and false endorsement in violation of 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a).

91.     Unless ACF is preliminary and permanently enjoined from committing the unlawful acts alleged herein, including the unauthorized use in commerce of the Infringing Domain, BofI will continue to suffer irreparable harm.  Accordingly, BofI is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 restraining ACF, its officers, agents and employees, and all persons acting in concert with it, from engaging in any further such acts of unfair competition and false designation of origin in violation of the Lanham Act.

92.     Pursuant to 15 U.S.C. § 1117, BofI is also entitled to recover damages it has sustained and will sustain as a result of ACF's wrongful conduct, and the gains, profits and advantages that ACF has obtained as a result of its wrongful conduct.  At present, BofI is unable to ascertain the full extent of its damages, or the gains, profits and advantages that ACF has obtained by reason of its wrongful conduct described herein.

93.     ACF's conduct was intentional, and BofI is therefore entitled to an award of treble damages against ACF pursuant to 15 U.S.C. § 1117.

94.     ACF's willful acts also make this an exceptional case under 15 U.S.C. § 1117, and thus, BofI is entitled to an award of attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF
### (Violation of the Anti-Cyber Squatting Protection Act, 15 U.S.C. § 1125(d))

95.     BofI incorporates the allegations of paragraphs 1 through 94 as if fully set forth herein.

96.     The BOFI EQUIPMENT FINANCE Mark is distinctive.  Moreover, as a consequence of the widespread use and popularity of BofI's products and services, consumers associate the BOFI EQUIPMENT FINANCE Mark with reliable, high quality financial services, and BofI enjoys significant resulting goodwill.

97.     BofI owns the registered United States trademark BOFI EQUIPMENT FINANCE. The registration of the BOFI EQUIPMENT FINANCE Mark on the principal register of the United States Patent and Trademark office is further evidence that it is distinctive.

98.     ACF's Managing Partner, Panuzio registered the Infringing Domain <bofiequipmentfinance.com>, and possibly others.  As recently as September 25, 2017, ACF caused the Infringing Domain to redirect all traffic to ACF's website, located at the domain name <acfinance.com>.

99.     The Infringing Domain is confusingly similar, and indeed nearly identical, to the

BOFI EQUIPMENT FINANCE Mark.  Upon information and belief, ACF has used and continues to use the BOFI EQUIPMENT FINANCE Mark in the Infringing Domain and in connection with promotion and operation of ACF's business, with a bad faith intent to profit from the Infringing Domain in violation of 15 U.S.C. § 1125(d).  Among other things, ACF adopted the Infringing Domain in order to promote products and services that overlap with those of BofI, with probable knowledge that the results of searches using popular search engines produce results that include BofI's websites and webpages.  In addition, upon information and belief, ACF was and is aware of the BOFI EQUIPMENT FINANCE Mark, and that ACF's actions are likely to mislead the public into believing that ACF's websites, products, and services are associated with, sponsored or endorsed by, or otherwise authorized by BofI, which is false.  Upon information and belief, ACF sought and continues to seek to profit from the unauthorized use of the BOFI EQUIPMENT FINANCE Mark.  ACF also has been informed of BofI's trademark use and rights, and of the infringing nature of the Infringing Domain and ACF's use of it.

100.   ACF's actions alleged herein were and are knowing, willful and deliberate.

101.   ACF's cybersquatting and other acts alleged herein deprive BofI of the benefit of the goodwill attached to the BOFI EQUIPMENT FINANCE Mark, injure BofI's reputation, and dilute the distinctive quality of the BOFI EQUIPMENT FINANCE Mark.

102.   ACF's activities constitute cybersquatting in violation of 15 U.S.C. § 1125(d).

103.   As a direct and proximate result of ACF's cybersquatting and other acts alleged herein, BofI has been, and continues to be, injured in its business and property, and has sustained and will continue to sustain substantial damage to its business, goodwill, and reputation in an

amount not presently known but subject to proof at or prior to trial.

104.     BofI is entitled to statutory damages pursuant to 15 U.S.C. § 1117(d), for each act of ACF's cybersquatting.  ACF has willfully engaged in continuing acts of cybersquatting, by registering and/or using the Infringing Domain.  The Infringing Domain is identical or confusingly similar to the BOFI EQUIPMENT FINANCE Mark.  In light of ACF's conduct, maximum statutory damages are justified and should be awarded.  BofI is further entitled to recover its costs in bringing this action.

105.     Unless ACF is preliminarily and permanently enjoined from committing the unlawful acts as set forth above, and the domain names associated with ACF's websites are ordered cancelled or transferred to BofI, BofI will continue to suffer irreparable harm.  BofI is therefore entitled to final injunctive relief against the continued use of the Infringing Domain and the continued operation of websites associated with the domain by ACF, its officers, agents, servants and employees, or any others acting in concert with it.  In addition, BofI is entitled to an injunction preventing ACF, its officers, agents, servants and employees, and all persons acting in concert with it from registering any additional domains, including but not limited to the BOFI EQUIPMENT FINANCE Mark or any confusingly similar variations thereof, and from operating any websites using any BOFI Mark, including but not limited to the BOFI EQUIPMENT FINANCE Mark or any confusingly similar variations thereof.

106.     BofI is entitled to the cancellation or transfer of all of ACF's domain names that use the BOFI trademark or the BOFI EQUIPMENT FINANCE name, under 15 U.S.C. § 1125(d)(1)(C).

## FOURTH CLAIM FOR RELIEF
(Trademark Infringement in Violation of UTSA)

107.    BofI incorporates the allegations of paragraphs 1 through 106 as if fully set forth herein.

108.    BofI has valid and protectable common law rights in the BOFI EQUIPMENT FINANCE Mark.

109.    BofI is the senior user of the BOFI EQUIPMENT FINANCE Mark.

110.    ACF's use of the confusingly similar Infringing Domain in connection with overlapping and/or competing goods and services, in the same or similar market to that of BofI, is likely to cause confusion as to the origin of ACF's goods and services, and/or as to BofI's association with ACF.

111.    Therefore, ACF's actions alleged herein constitute common law infringement of the BOFI EQUIPMENT FINANCE Mark.

112.    Upon information and belief, for the reasons set forth above, ACF's infringement of the BOFI EQUIPMENT FINANCE Mark, is and has always been, knowing and willful.

113.    ACF's wrongful acts have permitted and will continue to permit ACF to receive substantial profits based upon the strength of BofI's reputation and the substantial goodwill associated with the BOFI EQUIPMENT FINANCE Mark.

114.    As a result of ACF's infringing actions, BofI has been and will continue to be irreparably harmed.

115.    Unless ACF is preliminary and permanently enjoined from committing the unlawful

acts described herein, including without limitation, use of the Infringing Domain, BofI will continue to suffer irreparable harm.  Thus, BofI is entitled to an injunction restraining ACF, its officers, agents and employees, and all persons acting in concert with it, from engaging in any further such acts of trademark infringement in violation of Utah common law.

### FIFTH CLAIM FOR RELIEF
(Misappropriation of Trade Secrets Under UTSA, 13 U.C.A. § 13-24-2)

116.    BofI incorporates the allegations of paragraphs 1 through 115 as if fully set forth herein.

117.    BofI owns Trade Secret and Confidential Information that provides it with a commercial advantage because it is not generally known in the industry in which BofI does business, nor is it readily ascertainable by proper means.

118.    BofI's Trade Secret and Confidential Information includes, but is not limited to, the strategic plans for developing and marketing BofI's products and services, compensation plans, customer lists, term sheets, customer information, and pricing arrangements.  This information was developed only after BofI expended substantial cost and effort over a period of many years.

119.    BofI has a protectable interest in its Trade Secret and Confidential Information.

120.    BofI has taken reasonable steps to protect its Trade Secret and Confidential Information, including without limitation, limiting access to its information to employees engaging in BofI business and entering into agreements with those who have access to such information requiring that they maintain its confidentiality.

121.    ACF knew or had reason to know that BofI's Trade Secret and Confidential

-23-

Information was protected.  ACF's agents, Panuzio, Bruschke and Klepper, each specifically acknowledged the same in the Non-Disclosure Agreement they each executed.

122.    ACF has used improper means to appropriate BofI's Trade Secret and Confidential Information for its own use and benefit.

123.    As a direct and proximate result of the wrongful conduct of ACF and its agents, acting on its behalf, BofI has suffered, and continues to suffer, damages in an amount that is not now presently ascertainable, but exceeds $75,000.00, and will be established at trial.

124.    The misappropriation of BofI's Trade Secret and Confidential Information by ACF and its agents acting on its behalf was willful and malicious, entitling BofI to double exemplary damages and reasonable attorneys' fees.

125.    ACF will continue its acts of misappropriation and BofI will be irreparably harmed thereby unless such activities are enjoined by this Court.

**SIXTH CLAIM FOR RELIEF**
(Violation of Utah Unfair Competition Act U.C.A. § 13-5A-102)

126.    BofI incorporates the allegations of paragraphs 1 through 125 as if fully set forth herein.

127.    ACF competes directly with BofI.

128.    ACF's actions constitute unfair competition under the laws of the State of Utah, including, but not limited to, predatory hiring practices.

129.    Through its acts outlined above, ACF has competed unfairly, unlawfully, and fraudulently with BofI's legitimate business purposes.

130.     Such unfair competition by ACF has led to the material diminution in the value of BofI's business interests and reputation.

131.     ACF has benefited by reason of its acts of unfair competition and has benefited from its recruitment of BofI's employees.

132.     ACF's acts of unfair competition have been willful, deliberate, and malicious.

133.     As a direct and proximate result of ACF's acts of unfair competition, BofI has been damaged, and continues to suffer damages, in an amount that is not presently ascertainable, but exceeds $75,000.00, and will be established at trial.  BofI is entitled to recover damages to fairly and reasonably compensate it for ACF's conduct.

134.     BofI is entitled to an award of its attorneys' fees and costs for being required to file and prosecute this action.

135.     BofI has suffered and is continuing to suffer irreparable harm as a result of ACF's acts and is, therefore, entitled to preliminary and permanent injunctive relief to enjoin ACF from further misconduct.  ACF will continue its acts of unfair competition, and BofI will be irreparably harmed thereby unless such activities are enjoined by this Court.

<u>SEVENTH CLAIM FOR RELIEF</u>
(Tortious Interference with Economic Relations)

136.     BofI incorporates the allegations of paragraphs 1 through 135 as if fully set forth herein.

137.     BofI has current, and potential, contractual and business relationships with various third party customers in the equipment finance industry.

-25-

138.    ACF knows about BofI's current, and potential, customers, and yet ACF, through its agents, intentionally interfered with these economic relationships by, among other things, taking, and using for its own benefit, BofI's Trade Secrets and Confidential Information, recruiting BofI's employees, soliciting BofI's customers, and using, without authorization, BofI's BOFI EQUIPMENT FINANCE registered trademark

139.    There was no privilege or justification for ACF's misconduct.

140.    ACF engaged in the conduct complained of above in an intentional, willful, and malicious manner, with an improper motive and through improper means.  ACF sought to injure BofI and unfairly reap the benefits of BofI's efforts.

141.    As a direct and proximate result of the wrongful conduct of ACF and its agents, BofI has suffered, and continues to suffer, damages in an amount that is not now presently ascertainable, but exceeds $75,000.00, and will be established at trial.

142.    ACF will continue such wrongful conduct and BofI will be irreparably harmed thereby unless such activities are enjoined by this Court.

### EIGHTH CLAIM FOR RELIEF
(Tortious Interference with Contract)

143.    BofI incorporates the allegations of paragraphs 1 through 142 as if fully set forth herein.

144.    The Non-Disclosure Agreement that Panuzio, Bruschke and Klepper each executed contains certain covenants specifically providing that during employment and for a defined time thereafter, they will not compete with BofI; will not solicit, divert, entice, or take away current or

potential customers from BofI; and will not attempt to solicit or induce any BofI employee to terminate his or her employment with BofI.

145.    ACF knew or had reason to know of the existence of the covenants in the Non-Disclosure Agreement that Panuzio, Bruschke and Klepper each executed.

146.    Despite such knowledge, upon information and belief, ACF permitted, caused, encouraged, and/or induced other BofI employees to breach the covenants contained in the Non-Disclosure Agreement through improper means, including but not limited to the use of deceit, misrepresentation, and the making of disparaging false assertions.

147.    ACF has knowingly and intentionally enjoyed the economic benefits of these breaches.

148.    Upon information and belief, by permitting, causing, encouraging, and/or inducing BofI employees to breach the covenants in the Non-Disclosure Agreement, with an improper motive and through improper means, ACF has tortiously interfered with BofI's rights under those contracts.

149.    BofI enters into equipment lease contracts with its customers through which it provides senior secured warehouse facilities that finance assets for the benefit of specialty finance companies that source, service, and manage equipment leases ("Equipment Lease Contracts").

150.    ACF, through its agents, knew of the existence of BofI's Equipment Lease Contracts with various customers.

151.    Upon information and belief, despite such knowledge, ACF permitted, caused, encouraged, and/or induced BofI's customers to breach the Equipment Lease Contracts through

-27-

improper means, including but not limited to the use of deceit, misrepresentation, and the making of disparaging false assertions.

152.    Upon information and belief, ACF has knowingly and intentionally enjoyed the economic benefits of these breaches by hurting its competitor BofI, and potentially usurping the business opportunities for itself.

153.    Upon information and belief, by permitting, causing, encouraging, and/or inducing BofI's customers to breach the Equipment Lease Contracts, with an improper motive and through improper means, ACF has tortiously interfered with BofI's rights under those contracts.

154.    As a direct and proximate result of ACF's misconduct, BofI has suffered, and continues to suffer, injuries in an amount in excess of the jurisdictional minimum of this Court while, at the same time, ACF was unjustly enriched, and is continuing to be unjustly enriched.  BofI seeks recovery of its actual damages, and restitution/disgorgement of ACF's unjust enrichment, as well as an award of attorneys' fees and costs incurred in connection with its efforts to seek redress for ACF's misconduct.

155.    ACF engaged in the aforementioned misconduct with the intent to deprive BofI of its rights, to otherwise cause injury to BofI, and/or with conscious disregard of BofI's rights.  These acts and omissions constitute despicable, outrageous, oppressive and malicious conduct, and justify an award of exemplary and punitive damages against ACF.

## NINTH CLAIM FOR RELIEF
(Unjust Enrichment)

156.    BofI incorporates the allegations of paragraphs 1 through 155 as if fully set forth herein.

157.    ACF has been unjustly enriched by its actions.

158.    ACF's unauthorized use of the BOFI EQUIPMENT FINANCE Mark, use of the Infringing Domain, solicitation of BofI's customers, recruitment of BofI employees, and unlawful competition with BofI are all unjust and inequitable.

159.    BofI is entitled to all appropriate equitable relief to prevent such unjust enrichment.

Accordingly, BofI prays that this Court enter a judgment in its favor and against ACF by ordering:

1.    That ACF has infringed BofI's BOFI EQUIPMENT FINANCE Mark, and such infringement was intentional and willful;

2.    That ACF has engaged in false designation of origin, passing off, and unfair competition, and such conduct was intentional and willful;

3.    That therefore ACF is permanently enjoined from infringing any of BOFI'S Marks, including but not limited to BOFI EQUIPMENT FINANCE Mark;

4.    That therefore ACF is permanently enjoined from engaging in further false designation of origin, passing off, and unfair competition;

5.    That therefore ACF pays compensatory damages suffered by BofI as a result of the foregoing acts, trebled in accordance with 15 U.S.C. § 1117;

-29-

6.     That therefore ACF pays actual and statutory damages in accordance with 15 U.S.C. § 1125(d);

7.     That therefore ACF pays BofI enhanced damages for willful and intentional infringement;

8.     That therefore ACF pays BofI's costs, expenses and attorney fees;

9.     For punitive damages in the amount of not less than $10,000,000, to be proven at trial;

10.    For prejudgment and post-judgment interest on any judgment entered;

11.    That therefore ACF pays BofI all other money to which BofI may be entitled by law and equity; and

12.    Other relief as the Court may deem appropriate;

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), BofI hereby requests a trial by jury.

DATED this 2nd day of January, 2018.

SNELL & WILMER L.L.P.


/s/ David P. Williams
David P. Williams


SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Polly Towill (Cal. Bar No. 120420) *Pro hac vice pending*
Heather L. Plocky (Cal. Bar No. 279022) *Pro hac vice*
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
Telephone:  (213) 620-1780

*Attorneys for Plaintiff BofI Federal Bank*

-31-

4833-3658-4281